**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**LEUNEA MYERS**,<br><br>Defendant. | Case No. 18-cr-39 (CRC) |

**MEMORANDUM OPINION**

In March 2018, Leunea Myers pleaded guilty to a single count of wire fraud, in violation of 18 U.S.C. § 1343. The Court sentenced her to a term of 51 months' incarceration, to run consecutive to a two-year term imposed in Fairfax County, Virginia, for violating the terms of her probation there. Two years later, Myers filed a *pro se* motion to correct her sentence pursuant to 28 U.S.C. § 2255. The Court construes Myers's motion to raise several ineffective assistance of counsel claims, centering on both her plea and sentencing proceedings. The Court will deny the motion because her claims are all untimely under the limitation periods set out in 28 U.S.C. § 2255(f). In addition, for the few claims that are arguably timely, the plea and sentencing records conclusively show Myers is entitled to no relief. For those reasons, the Court will deny the motion without an evidentiary hearing. See 28 U.S.C. § 2255(b).

## I. Background

### A. Underlying proceedings

From February 2015 to November 2017, Myers worked as an office manager and bookkeeper for Sufka & Associates, a company providing professional management services for various trade associations. See Statement of Offense ¶¶ 1–2; Gov't's Sentencing Mem. at 1 n.1. During her time in that role, Myers embezzled funds from Sufka by making unauthorized charges on company credit cards and writing fraudulent checks to herself or to third parties to

pay bills she owed. Statement of Offense ¶ 6. As part of this scheme, Myers also used funds directly from Sufka's clients' bank accounts. Id. ¶¶ 13–14.

In March 2018, Myers and prosecutors from the U.S. Attorney's Office for the District of Columbia entered a plea agreement, under which Myers would plead guilty to a single-count Information for wire fraud, in violation of 18 U.S.C. § 1343. Plea Agreement at 1. In that agreement, Myers conceded that she fraudulently obtained $1,550,075.51 from Sufka and its clients, and agreed to restitution of that amount. Id. at 2, 8; Statement of Offense ¶ 15. The agreement also contained a tentative Sentencing Guidelines analysis, which estimated a recommended range of incarceration of 51 to 63 months. Plea Agreement at 4. The parties agreed they would not seek any departure from that range. Id. at 5. By accepting the agreement, Myers also waived her right to appeal and collaterally attack her sentence with some limited exceptions, including for ineffective assistance of counsel claims. Id. at 7.

On March 7, 2018, the Court accepted Myers's guilty plea.[1] See Minute Entry of Mar. 7, 2018. Because the wire fraud charge violated the terms of Myers's probation for an April 2016 embezzlement conviction in Fairfax County, Virginia, that jurisdiction issued a warrant for her arrest shortly after her guilty plea. See Gov't's Sentencing Mem. at 2. On May 25, 2018, Myers was sentenced to two years' incarceration for that probation violation. Id.

Several weeks later, the Court held a sentencing hearing in this case. The Court first accepted the Presentence Investigation Report's (PSR) factual recitation and Sentencing Guidelines calculation, which matched the estimate laid out in the parties' plea agreement. See

[1] Myers later re-pleaded to an Amended Information, updated only to include required language to substantiate the government's forfeiture allegation. See Am. Information at 3; Sentencing Hr'g Rough Tr. at 4:3–6:1.

Sentencing Hr'g Rough Tr. at 7:24–8:20. As part of its calculation of Myers's offense level, the Court included a 16-point enhancement for the amount of loss—more than $1,500,000 but less than $3,500,000—as well as a two-point enhancement because the offense resulted in substantial financial hardship. See id. at 8:3–8:5; see also PSR ¶¶ 44–45 (citing U.S.S.G. § 2B1.1(b)(1)(I), (b)(2)(A)(iii)). The Court ultimately adopted a total offense level of 22 and criminal history category of III, leading to an advisory Guidelines sentencing range of 51 to 63 months' incarceration. Sentencing Hr'g Rough Tr. at 8:17–20. The government asked for a sentence of 51 months. Id. at 14:14–16. In her sentencing memo and oral presentation, Myers's counsel advocated for a downward variance. Def.'s Sentencing Mem. at 7; Sentencing Hr'g Rough Tr. at 35:8–9. Among the justifications she raised was the uncertain nature of the stipulated loss amount used to calculate the offense level. Def.'s Sentencing Mem. at 17–18; Sentencing Hr'g Rough Tr. at 31:24–33:13. As counsel explained, there had never been a full review of the underlying financial records, and an initial review made clear that at least some number of transactions had in fact been authorized by Sufka. Def.'s Sentencing Mem. at 18. Myers's counsel thus asked the Court to consider the "reasonable likelihood" that the amount lost was below $1,500,000—which would have resulted in a lower Guidelines range of 41 to 51 months' incarceration. Id.

The Court ultimately agreed with the government and sentenced Myers to 51 months of incarceration, to run consecutively to the two-year term imposed for her Fairfax County, Virginia, probation violation. See Judgment at 2. In its explanation, the Court specifically noted that the chosen sentence would still be within Guidelines even if the true loss amount was "a little below" the $1.5 million mark. Sentencing Hr'g Rough Tr. at 45:23–46:2. The Court also

sentenced Myers to three years of supervised release and restitution of $1,550,075.51. See Judgment at 3, 6.

B. Section 2255 Motion

More than two years later, on December 2, 2020, Myers filed a *pro se* motion under 28 U.S.C. § 2255, asking the Court to correct her sentence. See Mot. at 12; Blount v. United States, 860 F.3d 732, 741 (D.C. Cir. 2017) (considering motion by *pro se* incarcerated litigant filed on day placed in the prison mail system). In that motion, Myers raises four separate grounds for relief. The Court reads all of these grounds as allegations that Myers received constitutionally ineffective assistance of counsel at the plea or sentencing stages, in violation of her right to counsel under the Sixth Amendment.[2]

*First*, Myers alleges that counsel failed to investigate or make a promised challenge to the loss amount used to calculate her Guidelines sentencing range. Mot. at 4. In support of this claim, Myers points to an adjusted calculation of the loss amount for one of Sufka's major clients, which was produced and made public in a related civil case brought against Sufka by that client. See id. at Attachments 1–2 (comparing initial loss amount calculations used in this case and in the D.C. Superior Court civil complaint). In Myers's view, that full analysis reveals that the actual loss amount could not have exceeded $1,500,000—as necessary for the 16-point enhancement she received. Id. at 4. *Second*, Myers alleges that trial counsel did not properly inform her of her right to appeal after sentencing. Id. at 5. *Third*, Myers contends that counsel induced her to plead guilty on the assumption that her state and federal sentences would run

---

[2] Although Myers' motion raises challenges to both the plea and sentencing proceedings, her prayer for relief only seeks to "correct[]" or reduce her sentence—not to vacate it altogether. See Mot. at 12.

concurrently, and that she would be able to self-surrender to the Bureau of Prisons after "time to handle [her] personal affairs." Id. at 7. In this claim, Myers also alleges counsel improperly failed to ask for a downward departure based on her "family circumstances." Id. *Fourth*, Myers claims that there was a "breakdown in communication" with counsel. Id. at 8.

## II. Legal Standards

A prisoner serving a federal sentence may petition the court to vacate, set aside, or correct its sentence if she believes that it "was imposed in violation of the Constitution or laws of the United States . . . or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). To obtain such collateral relief, the defendant "must clear a significantly higher hurdle than would exist on direct appeal," United States v. Frady, 456 U.S. 152, 166 (1982), and bears the burden of proving her claims by a preponderance of the evidence, United States v. Simpson, 475 F.2d 934, 935 (D.C. Cir. 1973). Ordinarily, after receiving such a motion the court must notify the U.S. attorney and "grant a prompt hearing." 28 U.S.C. § 2255(b). But a district court need not conduct an evidentiary hearing before denying a § 2255 motion when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Id. "[I]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal." United States v. Morrison, 98 F.3d 619, 625 (D.C. Cir. 1996) (quoting rules governing § 2255 proceedings).

The Court construes Myers's motion to claim that she received ineffective assistance of counsel in violation of the Sixth Amendment. Under the well-established test for such a claim, Myers "must show both that counsel performed deficiently and that counsel's deficient performance caused [her] prejudice." Buck v. Davis, 137 S. Ct. 759, 775 (2017) (citing

Strickland v. Washington, 466 U.S. 668, 687 (1984)). "Strickland's first prong sets a high bar." Id. To establish deficient performance, a "defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687–88. Judicial scrutiny of that performance is "highly deferential," and operates with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To satisfy Strickland's prejudice prong, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. For a challenge to a guilty plea, prejudice means "a reasonable probability that, but for counsel's errors," the defendant "would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). And for a challenge to a sentence, prejudice means "a reasonable probability" that, but for counsel's error, she "would have received a lower sentence." United States v. Rodriguez, 676 F.3d 183, 191 (D.C. Cir. 2012).

## III. Analysis

The Court will summarily deny Myers's § 2255 petition. See Morrison, 98 F.3d at 625. Based on the motion and material otherwise available in the public record, her motion is untimely. And for the few ineffective assistance claims that are even arguably timely, the plea and sentencing records conclusively demonstrate she is entitled to no relief.

### A. Timeliness

Motions under § 2255 are subject to a one-year "timeliness requirement." United States v. Arrington, 4 F.4th 162, 165 (D.C. Cir. 2021); 28 U.S.C. § 2255(f). That limitations period runs from the latest of several possible events, including, as relevant here, "the date on which the judgment of conviction becomes final," and "the date on which the facts supporting the claim or

claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1), (3). Applying either of those potential trigger dates, Myers's petition comes too late.

Myers's motion is untimely under § 2255(f)(1) because it was filed more than a year after her judgment of conviction became final. The Court entered judgment on July 7, 2018. See Judgment at 1. Because Myers did not appeal, that judgment became "final upon the expiration of the period in which [she] could have appealed to the court of appeals." United States v. Ingram, 908 F. Supp. 2d 1, 4 (D.D.C. 2012) (gathering cases in other circuits). Under Federal Rule of Appellate Procedure 4, Myers had 14 days to file a notice of appeal. See Fed. R. App. P. 4(b)(1)(A). Her judgment thus became final on July 21, 2018—making July 21, 2019, the default deadline for any § 2255 motion. See Dodd v. United States, 545 U.S. 353, 357 (2005). The December 2, 2020, motion was therefore untimely under 28 U.S.C. § 2255(f)(1).

Myers claims that her motion is nevertheless timely because newly discovered evidence in "November and December 2019, falling within one year of this filing," revealed the true loss to the victims of her fraud. See Mot. at 11. This contention goes to the application of § 2255(f)(4), which makes timely any motion filed within one year of "the date on which facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." This provision does not save any of Myers's claims.

As an initial matter, only a small portion of Myers's motion relies on newly discovered evidence about the loss amount. For instance, Myers alleges counsel did not fully advise her of her right to appeal, "induced" her plea based on unsupported assurances about how the sentence would be imposed, and failed to communicate with her during the plea and sentencing phases. See Mot. at 5–8. Because those arguments do not relate to any uncovered "facts" that could not

have previously "been discovered through the exercise of due diligence," § 2255(f)(4) does not apply.

More to the point, § 2255(f)(4) does not render any of Myers's claims timely because the evidence she cites was discoverable through the exercise of due diligence—indeed, it was posted on a public court docket—well over a year before she filed her motion. The second attachment to Myers's motion is a portion of a court filing in AABC Commissioning Group (ACG) v. Sufka & Associates, No. 2019 CA 02056 (D.C. Super. Ct.), a civil case over the fallout from Myers's fraud between her former employer and one of its major clients. This filing, she says, provides new and strong evidence that the loss amount used in her sentencing was artificially inflated—potentially to the tune of more than $100,000. See Mot. at 11. The problem for Myers is that this document is more than a year older than her motion. It appears to be the final four pages of ACG's amended complaint in the Superior Court action, filed in June 2019, 18 months before Myers lodged her motion.[3] See Am. Compl. ¶ 60, AABC Commissioning Group (ACG) v. Sufka & Assocs., No. 2019 CA 02056 (D.C. Super. Ct. June 20, 2019). And the relevant fact—that Myers misappropriated $1,209,160.23 from ACG—was available even earlier; ACG included the same allegation and supporting evidence in its original complaint, which appeared on the public docket in April 2019. See Compl. ¶ 54, AABC Commissioning Group (ACG) v. Sufka & Assocs., No. 2019 CA 02056 (D.C. Super. Ct. Apr. 2, 2019). Because this material was available to Myers more than a year before she filed her motion, any claim based on that evidence is still untimely under § 2255(f)(4).

[3] The Court takes judicial notice of the D.C. Superior Court docket and filings, which are public records. See Rogers v. District of Columbia, 880 F. Supp. 2d 163, 166 (D.D.C. 2012); Veg-Mix, Inc. v. USDA, 832 F.2d 601, 607 (D.C. Cir. 1987).

B. Merits of Loss Amount Claims

Even if the facts relating to the loss amount were only discoverable within one year of the motion, this new evidence would still not entitle Myers to relief under the stringent standards applied to § 2255 ineffective assistance of counsel claims. Here, the Court limits its discussion to the portions of Myers's claims that are even arguably related to the proper loss amount. In her first claim for relief, Myers alleges that counsel failed to investigate and make a promised objection to the loss amount, and that the analyses of Sufka's financial records in the Superior Court suit reveal that the total loss should have been under $1.5 million.[4] See Mot. at 4. And as part of her final claim, Myers asserts that counsel "pressured" her to sign the plea agreement despite "concerns" she had raised about the loss reporting. Id. at 8. These claims fail because Myers cannot establish both deficient performance and prejudice as to each, as required for an ineffective assistance claim. See Strickland, 466 U.S. at 687.

Several of Myers's claims seem to go to her decision to plead guilty. In particular, she alleges she did so on the "assur[ance]" that the loss amount would be challenged, and under "pressure" from counsel. Mot. at 4, 8. The record at the plea stage contradicts these assertions, creating a "formidable barrier" to relief in collateral proceedings. United States v. Farley, 72

[4] Myers may indeed be correct about the underlying loss amount. The first attachment to Myers's motion is titled "Sufka & Associates Loss Schedule Related to Leunea Myers." See Mot. Attachment 1. The provenance of the document is unclear, but it appears to roughly match the initial loss calculations used in the early stages of this criminal case. See id. (calculating loss of $1,591,631.89); Def.'s Sentencing Mem. at 17 (noting initial loss estimate of $1,591,075.51). Handwritten notations on that document could be interpreted to suggest that the vast majority of the loss—$1.47 million of the $1.59 million total—was borne by Sufka's biggest client, ACG. But as the Superior Court documents make clear, ACG later calculated its monetary loss to be more than $250,000 lower—or roughly $1.21 million. See Mot. Attachment 2 ¶ 60. Assuming it is proper to apply this updated, lower loss amount for ACG, and assuming no other changes to the loss schedule, the new total loss amount would, as Myers suggests, be between $150,000 and $200,000 below the $1,500,000 Guidelines threshold.

F.3d 158, 163 (D.C. Cir. 1995). In her plea agreement, Myers expressly stipulated to a loss amount of $1,550,075.51, and agreed that she would not challenge any Guidelines calculation based on that sum. See Plea Agreement at 3–4, 8. At the plea hearing, Myers affirmed that she had reviewed the agreement with counsel and was entering her plea voluntarily. Plea Hr'g Rough Tr. at 12:5–14. She also conceded the accuracy of the government's proffer and the signed statement of offense, id. at 9:12–24, which each tagged the loss amount at more than $1.5 million, see id. at 8:9; Statement of Offense ¶ 15. Myers's "declarations in open court carry a strong presumption of verity," Farley, 72 F.3d at 163, and "far outweigh [her] bare assertion now to the contrary," United States v. Taylor, 254 F. Supp. 3d 145, 157 (D.D.C. 2017). Accordingly, based on the clear record, Myers cannot show she pleaded guilty on any assurance that a challenge to the loss amount was forthcoming, nor under undue pressure from counsel to drop her objection. And even if Myers could adequately demonstrate the existence of an unfulfilled promise or undue pressure, she has not expressly alleged that, but for these errors, she "would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Because such a showing is necessary to satisfy Strickland's prejudice requirement, id., her claims related to the plea process would fail regardless.

The remainder of Myers's challenge centers on counsel's alleged failure to object to the loss calculation at sentencing. Here, the Court rejects Myers's claim on Strickland's prejudice prong. To establish prejudice at sentencing, a defendant must show "a reasonable probability" that, but for counsel's error, she "would have received a lower sentence." Rodriguez, 676 F.3d at 191. The Court will assume that Myers could establish deficient performance, and that constitutionally effective counsel would have convinced the Court to reduce the total loss amount to somewhat below $1,500,000. Had counsel done so, Myers would have been subject

to a 14-point enhancement, rather than the 16-point one she received. See U.S.S.G. § 2B1.1(b)(1). Her total offense level would then have been 20, and the Guidelines sentencing range would have been 41 to 51 months of incarceration, rather than 51 to 63 months.[5]

Ordinarily, application of an incorrect sentencing Guidelines range constitutes prejudice. See Molina-Martinez v. United States, 578 U.S. 189, 200 (2016). But "[t]here may be instances when, despite application of an erroneous Guidelines range, a reasonable probability of prejudice does not exist." Id. This is one such instance, as the record demonstrates the Court thought the "sentence it chose was appropriate irrespective of" which Guidelines range applied. Id. At sentencing, Myers's counsel raised the possibility of an error in the stipulated loss amount, and she explained that a correct figure might have reduced the applicable Guidelines range. See Def.'s Sentencing Mem. at 17–18; Sentencing Hr'g Rough Tr. at 31:24–33:13. The Court explicitly took up this question when it pronounced the sentence. It noted that, even if the lower range applied, the sentence "would be on the high end as opposed to the low end" of

[5] Myers suggests the material produced in the Superior Court case "would have also challenge[d] the substantial hardship enhancement[,] as the audit exposed" that Sufka's owner had also taken "unauthorized distributions." See Mot. at 4. Even assuming the audit revealed such wrongdoing on her employer's part, the Court still sees justification for applying the two-level enhancement for causing substantial financial hardship to *some* victim of her misconduct. The sentencing record demonstrates that Sufka's two major clients were significantly financially burdened by Myers's fraud—losing "an entire year's worth of operating revenue" in one case, and "effectively half of what they had in the bank" in the other. Sentencing Hr'g Rough Tr. at 21:2–4. One of those clients, ACG, has now alleged in a separate suit that it lost over $1.2 million, at least substantially due to Myers's acts. That is still enough to support a finding of "substantial financial hardship" for a small company like ACG. See U.S.S.G. § 2B1.1(b)(2)(A)(iii); see also United States v. George, 949 F.3d 1181, 1184 (9th Cir. 2020) ("[S]ection 2B1.1(b)(2) requires the sentencing court to determine whether the victims suffered a loss that was significant in light of their individual financial circumstances."); United States v. Poulson, 871 F.3d 261, 268 (3d Cir. 2017) (agreeing with the observation of "sister circuits that the determination of 'substantial financial hardship' is subject to the usual—and significant—degree of discretion afforded a district court during sentencing").

recommended sentences. Sentencing Hr'g Rough Tr. at 46:1–2. And the Court opined that both Guidelines possibilities—i.e., the low end of the higher range or the high end of the lower range—seemed to be "a pretty fair reflection" of the conduct, "based on all of the circumstances," including the defendant's personal background, her history of similar offenses, and comparisons with "other defendants who have committed similar acts." Id. at 44:25–46:2. Because the record demonstrates "what the district court might have done had it considered the correct Guidelines range," and because that outcome would have been the same, Myers cannot establish prejudice. Molina-Martinez, 578 U.S. at 201.

## IV. Conclusion

For the foregoing reasons, the Court will deny Defendant's § 2255 motion. A separate Order shall accompany this memorandum opinion.

CHRISTOPHER R. COOPER
United States District Judge

Date: January 11, 2022